## EXHIBIT A

**Bid Procedures Order**

**GARFUNKEL WILD, P.C.**
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Telefax: (516) 466-5964
Burton S. Weston
Afsheen A. Shah
Adam T. Berkowitz
*Proposed Counsel for the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

LONG BEACH MEDICAL CENTER, *et al.*.

                    Debtors.
-----------------------------------------------------------x

Chapter 11
Case No. 14-_____ ( )

## ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' REAL ESTATE AND DESIGNATED PERSONAL PROPERTY ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING RELATED THERETO, (C) APPROVING THE FORM OF NOTICE OF THE AUCTION AND SALE HEARING, AND (D) APPROVING A TERMINATION FEE AND EXPENSE REIMBURSEMENT

Upon that portion (the "**Bidding Procedures Motion**") of the motion (the "**Motion**"[1]), dated February 19, 2014 of Long Beach Medical Center ("LBMC") and Long Beach Memorial Nursing Home, Inc., d/b/a The Komanoff Center for Geriatric and Rehabilitative Medicine ("**Komanoff**"), as debtors-in-possession (each a "Debtor, and collectively sometimes referred to as the "Debtors" or the "Medical Centers") in these chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed attorneys, Garfunkel Wild, P.C. (each a "**Debtor**" and collectively the "**Debtors**") for entry of an Order, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i) approving

---

[1] Capitalized terms used herein, unless herein defined, shall be used with the meanings ascribed to such terms in the Motion.

the proposed Bidding Procedures in the form of Schedule 1 hereto to be used in connection with the proposed Sale of substantially all of the Acquired Assets of the Debtors to South Nassau Communities Hospital, as Buyer ( "**SNCH**" or "**Buyer**"), or to any competing bidder or bidders (the "**Successful Bidder(s)**") that submits or collectively submit a higher or better offer or offers for the Acquired Assets, (ii) scheduling an auction (the "**Auction**") and a hearing to approve the Sale (the "**Sale Hearing**"); (iii) approving the form and manner of the Notice of the Auction and Sale Hearing (the "**Sale Notice**") substantially in the form attached as Schedule 2 hereto; and (d) approving the payment of the Termination Fee and Expense Reimbursement (collectively the "**Bidding Protections**") and certain overbid procedures; and this Court having held a hearing on the Bidding Procedures Motion on March ____, 2014 (the "**Bidding Procedures Hearing**"); and, based on the Bidding Procedures Motion and the record of the Bidding Procedures Hearing, it now appearing that the relief requested in the Bidding Procedures Motion is in the best interest of the Debtors' estates; and after due deliberation thereon and good cause appearing therefor, it is hereby:

### FOUND AND DETERMINED THAT:[2]

A.       This Court has jurisdiction over the Bidding Procedures Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Bidding Procedures Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       Good and sufficient notice of the relief sought in the Bidding Procedures Motion has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Bidding Procedures Motion has been afforded to

---

[2]       Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See Fed. R. Bankr. P. 7052.

2740865v.2

interested persons and entities, including: (a) the Debtor's thirty (30) largest unsecured creditors (on a consolidated basis) and, upon its appointment, counsel for the official committee of unsecured creditors (the "**Creditors' Committee**"); (b) each of the Debtor's secured creditors (c) the Office of the United States Trustee for the Eastern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) all counter-parties to the Assigned Contracts (hereinafter defined); (f) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health, (iii) the United States Attorney for the Southern District of New York, (iv) the Attorney General of the State of New York; (v) Corporate Counsel of the City of Long Beach; (vi) the Pension Benefit Guaranty Corporation; (vii) the Internal Revenue Service; and (viii) the New York State Department of Taxation and Finance; (g) counsel to the Buyer; (h) the United States Department of Justice, Commercial Litigation Division; (i) the United States Department of Health and Human Services; and (j) all parties who are known to assert a Lien on the Acquired Assets and related properties; (k) all counter-parties to the Assigned Contracts; and (l) all parties identified by the Debtors as potentially having an interest in acquiring some or all of the Acquired Assets ("**Notice Parties**").

C.     The proposed Sale Notice (including, without limitation, the sale of the Acquired Assets and the assumption and assignment of the Assigned Contracts and Cure Amounts, the Bidding Protections and the Bidding Procedures, as set forth in the Bidding Procedures Motion and the Purchase Agreement, is good, appropriate, adequate, and sufficient, and is reasonably calculated to provide all interested parties, including the Notice Parties, and all creditors of the Debtors who are listed on the Schedules filed by the Debtors or who have filed proofs of claim against the Debtors' estates ("**Scheduled and Filed Creditors**"), with timely and

3

proper notice of the Sale, the Bidding Protections and the Bidding Procedures, and no other or further notice of the Sale, the assumption and assignment of the Assigned Contracts and Cure Amounts, the Bidding Protections or the Bidding Procedures, as set forth herein and in the Bidding Procedures Motion, is required.

D.    The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Bidding Procedures Motion, including this Court's (i) approval of the Bidding Procedures, attached hereto as Schedule 1, (ii) approval of payment of the Bidding Protections (as described below) from the proceeds of any Alternate Transaction or as otherwise provided in the Purchase Agreement, (iii) determination of final Cure Amounts in the manner described herein, and (iv) approval of the form and manner of service of the Sale Notice attached hereto as Schedule 2.

E.    The Debtors have articulated good and sufficient reasons for, and the best interests of the Debtors' estates will be served by, this Court scheduling a subsequent Sale Hearing to consider whether to grant the remainder of the relief requested in the Motion, including approval of the proposed Sale in accordance with either (i) the Purchase Agreement between the Debtor and the Buyer attached as Exhibit C to the Motion, or (ii) such other agreement or agreements by and between the Debtor and the Successful Bidder or Successful Bidders, free and clear of, among other things, all liens, claims, encumbrances, and interests (collectively, "**Liens**") (other than the Permitted Liens) with the same to attach to the proceeds thereof pursuant to section 363 of the Bankruptcy Code.

F.    The Buyer has provided the Debtors with debtor in possession financing to administer these chapter 11 cases under separate order of this Court.

4

G.    The Bidding Protections, to the extent payable, to be paid under the circumstances set forth in the Purchase Agreement as modified by this Order, is (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by Buyer, (iii) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by Buyer, and (iv) necessary to induce Buyer to continue to pursue the Sale and to continue to be bound by the Purchase Agreement.

H.    The Debtors' authorization to pay the Bidding Protections is an essential inducement and condition relating to Buyer's entry into, and continuing obligations under, the Purchase Agreement. The Debtors' promise to pay the Bidding Protections, which has induced Buyer to submit its bid that will serve as a minimum or floor bid on which the Debtors can rely, provides a material benefit to the Debtors' estates, and their creditors by increasing the likelihood that the best possible purchase price for the  Acquired Assets will be received. Accordingly, the Bidding Protections and the Bidding Procedures are reasonable and appropriate.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    All objections to entry of this Order or to the relief provided herein and requested in the Bidding Procedures Motion that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

### The Bidding Procedures

2.    The Bidding Procedures, as set forth on <u>Schedule 1</u> and incorporated herein by reference as if fully set forth herein, are hereby approved in all respects and shall

5

govern all bids and bid proceedings relating to the Acquired Assets. Notwithstanding the above, any party in interest may object at the Sale Hearing to the criteria used by the Debtors to select the highest or otherwise best offer for the Acquired Assets.

3.　　The deadline for submitting bids for the Acquired Assets (the "**Bid Deadline**") shall be April ___, 2014, at 4:00 p.m. (EST).

4.　　Except as may be limited by the Purchase Agreement, the Debtors are authorized to extend the deadlines set forth in this Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason.

5.　　The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

## The Auction

6.　　The Auction shall commence at 10:00 a.m (EST) on April___, 2014 at Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, or such later time or other place as decided by the Debtors, and the Debtors shall notify all Qualified Bidders of any such later time or place; provided, however, in the event that no Qualified Bids (other than that submitted by Buyer) are received by the Bid Deadline or if the aggregate value of the highest Qualified Bids that have been submitted for all or a portion of the Acquired Assets does not exceed the Minimum Bid(s), the Debtors shall not be required to conduct an Auction, and in such event the Debtors shall proceed with the approval of the Purchase Agreement.

## The Bidding Protections

7.　　Sections 6.1, 6.2, 6.3 and 6.5 of the Purchase Agreement is approved and binding on the Debtors and their estates. The Debtors are authorized and directed to pay the Bidding Protections, to the extent incurred and solely in the event of the consummation of an

2740865v.2

Alternate Transaction from the first proceeds of such transaction or as otherwise set forth in the Purchase Agreement, without further order of the Court.

8.      Upon the entry of an order approving the Sale of the Acquired Assets to an entity other than the Buyer, the Successful Bidder shall be required to: (i) repay to the Buyer, within five (05) business days of the entry of such order, any outstanding amounts of debtor in possession financing ("DIP Financing"); and (ii) assume and continue to perform all of Buyer's rights and obligations in connection with the DIP Financing and under all related agreements (the "DIP Financing Agreements") including the Carve Out, as defined in any order approving the DIP Financing Agreements.

9.      The terms of the Purchase Agreement shall govern (i) the conditions under which the bid of Buyer is terminable (which are terms and conditions for termination of the Purchase Agreement), (ii) Buyer's entitlement to payment of the Deposit, and (iii) the Bidding Protections.

### Sale Hearing

10.      The Sale Hearing shall be held before the Honorable _____, United States Bankruptcy Judge, on, April_____2014 at _____.m. (EST) at the United States Bankruptcy Court for the Eastern District of New York, _____, Courtroom No. _____, at which time this Court shall consider (i) approval of the Sale to SNCH or any other Successful Bidder(s); (ii) the proposed assumption and assignment of the Assigned Contracts and related Cure Amounts in connection with the Sale; (iii) the entry of the proposed sale order, substantially in the form attached to the Motion as Exhibit B (the "**Sale Order**"); (iv) any issues or objections that are timely interposed by any parties;  and (v) such other or further relief as this Court may deem just or proper.

7

11.    Except as may be limited by the Purchase Agreement, the Sale Hearing may be adjourned by the Debtors, after consultation with the Creditors' Committee, without further order of this Court, by filing a notice with this Court and serving such notice on all Qualified Bidders.

### Notice

12.    The Notice of Auction and Sale Hearing substantially in the form attached hereto as Schedule 2 hereto is hereby approved.

13.    By no later than March ___, 2014, the Debtors shall cause a copy of the Bidding Procedures, the Sale Notice and this Order to be served upon the Notice Parties and the Scheduled and Filed Creditors via first class mail.

14.    As soon as practicable after entry of this Order, the Debtors shall submit the Notice of Auction and Sale Hearing for publication once in The New York Times (Local Edition) pursuant to Bankruptcy Rule 2002(l).

15.    The notice as set forth in the preceding paragraphs shall constitute good and sufficient notice of the Motion, the Auction, the Sale Hearing and the proposed Sale Order, and no other or further notice of the Motion, the Auction, the Sale Hearing and/or the proposed Sale Order shall be necessary or required.

### Objections to Motion

16.    Objections, if any, to the Sale Motion must be made in writing, must state with particularity the reasons for the objection or response, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the specific grounds therefore, and must be filed with the Clerk of the Bankruptcy Court (with a copy to be delivered to the Chambers of the Honorable _____, United    States    Bankruptcy    Judge,

8

_____,) and shall be served so as to be **received** no later than 4:00 p.m. (EST) _____, 2013 (the "**Objection Deadline**"), upon: (a) the Office of the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722, Attn: Christine H. Black, Assistant U.S. Trustee, (b) counsel to the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck New York, 11021, Attn: Burton Weston, Esq., Afsheen Shah, Esq. and Adam T. Berkowitz, Esq.; (c) counsel for SNCH, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036-8299 Attention Rick Zall, Esq. and Lee Barkin, Esq. and Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention: Frank A. Oswald, Esq.; and (e) counsel to the Creditors' Committee.

## Assigned Contracts

17.    The Debtors shall file a copy of the Schedule of Assigned Contracts (the "**Assumption Schedule**") with the Court no later than fifteen (15) days prior to the Objection Deadline and shall concurrently serve notice of such schedule upon all counterparties to the Assigned Contracts and the Notice Parties.

18.    The Assumption Schedule shall identify the proposed Assigned Contracts and the corresponding Cure Amounts required by section 365 of the Bankruptcy Code, if any. The Debtors, with the consent of Buyer or the Successful Bidder(s), as applicable, shall have the right to amend the Assumption Schedule before the tenth (10th) business day prior to the closing of the Sale to remove contracts or leases therefrom. All non-Debtor parties to the Assigned Contracts shall have until the Objection Deadline to file an objection (an "**Assumption Objection**") to the assumption and assignment of the Assigned Contracts listed on the Assumption Schedule to which they are parties, or to the Cure Amounts listed for those Assigned Contracts. Any party filing an Assumption Objection shall state with specificity the basis of the

objection and what Cure Amount it asserts, and shall include appropriate documentation in support thereof.

19.     The Debtors, with the consent of SNCH or the Successful Bidder(s), as applicable, shall have the right to amend the Assumption Schedule at any time prior to ten (10) business days before the closing of the Sale to add additional Assigned Contracts thereto.  The Debtors shall file and serve notice of any such amendment (an "**Amendment Notice**") on all non-Debtor parties to the Assigned Contracts added to the Assumption Schedule by that amendment.  All non-Debtor parties to the Assigned Contracts added to the Assumption Schedule pursuant to this paragraph shall have until fifteen (15) days after the date of service of the applicable Amendment Notice to file an Assumption Objection.

20.     If an Assumption Objection is timely filed and not consensually resolved, this Court may hold a hearing with respect to such Assumption Objection either at the Sale Hearing or at such other date as this Court shall designate.  If the Assumption Objection relates only to the Cure Amount of an Assigned Contract, that Assigned Contract may be assumed by the Debtors and assigned to Buyer or the Successful Bidder(s), as applicable, provided, however, that the amount asserted by the objecting party as the proper Cure Amount, or a different amount set by this Court, shall be held in escrow pending further order of this Court or mutual agreement of the parties as to the proper Cure Amount for that Assigned Contract.  The Debtors and Buyer or the Successful Bidder(s), as the case may be, are hereby authorized to settle, compromise, or otherwise resolve any disputed Cure Amounts with the relevant non-Debtor party to any Assigned Contract without Court approval or notice to any party.

21.     If no Assumption Objection is timely filed and served, and subject to entry of an Order by this Court at the Sale Hearing approving the Sale and proposed assumption and

10

assignment of the Assigned Contracts in connection therewith, the Cure Amounts set forth in the Assumption Schedule, as amended, shall be controlling notwithstanding anything to the contrary in such Assigned Contracts, and the non-Debtor parties to the Assigned Contracts shall be barred from asserting against the Debtors or Buyer (or the Successful Bidder(s)) any other claim arising from the applicable Assigned Contracts.

22.    The effective date of any assumption and assignment of any Assigned Contract shall be the date on which the Sale closes.  Any Cure Amounts to be paid under any Assigned Contract shall be paid by Buyer (or Successful Bidder(s), as applicable) either prior to, upon, or promptly following the closing of the Sale or as otherwise agreed to by the parties to the Assigned Contract.

### Additional Provisions

23.    The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Order.

24.    Nothing contained in this Order precludes any party in interest from objecting to the Sale in accordance with the objections procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Bidding Procedures Motion.

25.    The Debtors are hereby authorized to implement the Bidding Procedures and conduct the Auction without the necessity of complying with any state or local bulk transfers law or requirement or any similar law of any state or other jurisdiction which applies in any way to any of the transactions under the Purchase Agreement.

26.    This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including jurisdiction to allocate the

11

consideration paid for some or all of the Acquired Assets to each individual asset, as necessary, to determine the proceeds to which a Lien attached.

27.    Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof.

Dated: _____, 2014
       _____, New York


                                        _____
                                        HONORABLE _____
                                        UNITED STATES BANKRUPTCY JUDGE

# SCHEDULE 1

**BIDDING PROCEDURES
AND TERMS AND CONDITIONS OF SALE**

Long Beach Medical Center ("**LBMC**") and Long Beach Memorial Nursing Home, Inc., *d/b/a* The Komanoff Center for Geriatric an Rehabilitative Medicine ("**Komanoff**," and each a "**Debtor**" and collectively, the "**Debtors**") has entered into an asset purchase agreement (the "**Purchase Agreement**") with South Nassau Communities Hospital ("**SNCH**" or "**Buyer**"), dated as of February 18, 2014, for the sale of substantially all of the Debtors' real property and certain related personal property assets including the operating assets of Komanoff (collectively, the "**Acquired Assets**"), free and clear of liens, claims and encumbrances. The Debtors are currently soliciting other higher or better bids for the sale of the Acquired Assets (the "**Sale**").[1]

A.    **Bidding Procedures**

Set forth below are the bidding procedures (the "**Bidding Procedures**") with respect to the Sale by the Debtors of the Acquired Assets. On February ___, 2014, the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**") granting the Debtors' motion (the "**Procedures Motion**") insofar as it sought the approval of the Bidding Procedures and Bidding Protections to be employed in connection with the solicitation of higher or better bids and an auction (the "**Auction**") for the Sale of the Acquired Assets.

B.    **Relevant Dates**

Bid Deadline:           April ___, 2014 (4:00 p.m. EST)

Auction:               April ___, 2014 (10:00 a.m. EST)

Objection Deadline:     April ____, 2014 (4:00 p.m. EST)

Sale Hearing:          April ____, 2014 (_____.m. EST)

C.    **Acquired Assets to be Sold Free and Clear**

The Debtors are offering for Sale the Acquired Assets, as defined in the Purchase Agreement. Except as otherwise provided in the Purchase Agreement with respect to the Sale, all of the Sellers' right, title and interest in and to the Acquired Assets shall be sold free and clear of all liens, claims and encumbrances, security interests and other restrictions on transfer (collectively, the "**Liens**") to the extent permitted by section 363 of the Bankruptcy Code and other applicable law (except as otherwise expressly provided in the Purchase Agreement) with such Liens to attach to the proceeds of the Sale.

---

[1] Capitalized terms, unless herein defined, shall have the meaning ascribed to them in the Purchase Agreement.

2739432v.4

Except as expressly provided in the Purchase Agreement, the Sale of the Acquired Assets shall be on an **"as is, where is"** basis and without representations or warranties of any kind, nature or description by the Debtors or its agents.

### D.    **Stalking Horse Bidder**

The Agreement provides that the Buyer shall act as the "stalking horse bidder" in the Auction for the Acquired Assets with the right to receive a termination fee of $630,000 (the "**Termination Fee**") and/or an expense reimbursement of up to $210,000 for its reasonable and documented out-of-pocket costs in connection with the Sale (the "**Expense Reimbursement**," together with the Termination Fee, the "**Bidding Protections**"), under the terms set forth in the Purchase Agreement. The Bidding Protections shall be paid from the first proceeds of an Alternate Transaction, including the Sale, or as otherwise set forth in the Purchase Agreement.

The Buyer has provided the Debtors with debtor in possession financing to administer their chapter 11 cases. Upon the entry of an order approving the Sale of the Acquired Assets to an entity other than the Buyer, the Successful Bidder shall be required to: (i) repay to the Buyer, within five (05) business days of the entry of such order, any outstanding amounts of debtor in possession financing ("**DIP Financing**"); and (ii) assume and continue to perform all of Buyer's rights and obligations in connection with the DIP Financing and under all related agreements (the "**DIP Financing Agreements**").

THE DEBTORS RESERVE THE RIGHT, IN THEIR DISCRETION, TO DETERMINE WHETHER ANY BID IS BETTER, IF NOT HIGHER, THAN ANOTHER BID SUBMITTED DURING THE AUCTION. THE DEBTORS MAY CONSIDER A VARIETY OF FACTORS IN MAKING THIS DECISION, INCLUDING WITHOUT LIMITATION, ANY PROPOSED CONDITIONS TO CLOSING, TIMING OF CLOSING OF THE PROPOSED TRANSACTION, AND THE LIKELIHOOD OF THE BIDDER TO OBTAIN REQUISITE APPROVALS.

### E.    **Mailing the Auction and Hearing Notice**

The Debtors shall provide notice of the Auction and Sale of the Acquired Assets (the "**Sale Notice**") together with a copy of these Bidding Procedures by first class mail, postage prepaid, to: (a) the Debtor's thirty (30) largest unsecured creditors (on a consolidated basis) and, upon its appointment, counsel for the official committee of unsecured creditors (the "**Creditors Committee**"); (b) each of the Debtor's secured creditors (c) the Office of the United States Trustee for the Eastern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) all counter-parties to the Assigned Contracts (hereinafter defined); (f) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health, (iii) the United States Attorney for the Eastern District of New York, (iv) the Attorney General of the State of New York; (v) the Long Beach City Attorney; (vi) the New York State Department of Labor; (vii) the Pension Benefit Guaranty Corporation; (viii) the Internal Revenue Service; and (ix) the New York State Department of Taxation and Finance; (g) counsel to the Buyer; (h) the United States Department of Justice, Commercial Litigation Division; (i) the United States Department of Health and Human Services; (j) all parties who are known to assert a Lien on the Acquired

2739432v.4

Assets and related properties (k) all parties identified by the Debtors as potentially having an interest in acquiring some or all of the Acquired Assets ("**Notice Parties**"); and a copy of the Sale Notice to all creditors of the Debtors who are listed on the Schedules filed by the Debtors or who have filed proofs of claim against the Debtors' estates ("**Scheduled and Filed Creditors**").

Any other party in interest that wishes to receive a copy of the Bidding Procedures Order and/or the Procedures Motion may make such request in writing to Burton Weston, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, by telephone: (516) 393-2588, or via email at bweston@garfunkelwild.com.

### F.    Confidentiality Agreement / Due Diligence

Any entity that wishes to conduct due diligence with respect to the Acquired Assets, other than Buyer, must (i) deliver to the Debtors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors and on terms no less favorable than the agreement executed by the Buyer, and (ii) deliver to the Debtors a written non-binding expression of interest to purchase the Acquired Assets, reasonably acceptable to the Debtors.

Interested parties that comply with the foregoing (each such entity referred to as a "**Potential Bidder**"), shall be permitted to conduct diligence with respect to the Acquired Assets, provided however, that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

### G.    Qualification of Bids and Bidders

In order to participate in the bidding process and to have a bid considered by the Debtors, each Potential Bidder must deliver a written, irrevocable offer for some or all of the Debtors' Acquired Assets, satisfying the below criteria. **A BID MAY BE MADE FOR ALL OR ONLY A PORTION OF THE ACQUIRED ASSETS.** A "Qualified Bidder" is a Potential Bidder that delivers a binding bid that in the Debtors' discretion, after consultation with the Creditors' Committee, satisfies the following (a "Qualified Bid"):

(a)    Bid Deadline.  Each Bid Package (as defined below) must be delivered in written form to: (i) counsel to the Debtors, Burton Weston, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, (ii) counsel for the Creditors Committee, _____, Attn: _____., and (iii) counsel to the United States Trustee, in each case in each case so as to **actually be received no later than 4:00 p.m. (prevailing Eastern Time) on April ___, 2014 (the Bid Deadline)**.

(b)    Bid Package.  Each bid must include (collectively, the "Bid Package"): (i) a written and signed irrevocable offer stating that (x) the bidder offers to consummate a sale transaction on terms and conditions no less favorable than in the Purchase Agreement and in an amount at least equal to the Minimum Bid (as defined below), (y) confirming that the bid will remain irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order (as defined below), and (ii) closing with the Successful Bidder and (z) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not

3

require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representation except as expressly provided with the Modified Purchase Agreement (as defined below); (ii) an executed copy of the Purchase Agreement as modified by the bidder in accordance with its bid (the "**Modified Purchase Agreement**"); and (iii) an electronic markup of the Agreement clearly showing the revisions in the Modified Purchase Agreement (formatted as a Microsoft Word document or such other word processing format acceptable to the Debtors) and the electronic markup of the Purchase Agreement.   The Debtors, in consultation with the Creditors' Committee, shall determine whether any Modified Purchase Agreement that modifies the Purchase Agreement in any respect beyond the identity of the purchaser and the purchase price under the agreement is a Qualified Bid.

(c)    Minimum Bid. The amount of the purchase price in such bid must provide for net cash (or cash equivalent) that is at least in the amount of: $100,000 more than the base price contained in the Purchase Agreement, plus the amount of the Bidding Protections (the "**Minimum Bid**"). Any Minimum Bid must provide for sufficient cash consideration to fully fund (i) the cash amounts necessary to satisfy, upon the entry of an order approving the Sale of the Acquired Assets, any outstanding amounts and remaining loan commitments under the DIP Financing Agreements, including the Carve Out, as defined in any order approving the DIP Financing Agreements (collectively, the "**Assumed DIP Obligations**"); and (ii) the Bidding Protections.

(d)    Financial Information.   The Bid Package must contain such financial and other information that will allow the Debtors to make a determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, including any proposed conditions to Closing and adequate assurance of such bidder's ability to perform under any Assigned Contracts and to pay all cure amounts required to assume and assign any such Assigned Contracts.

(e)    Additional Bid Protections.  The bid must not request or entitle the Potential Bidder to any termination fee, transaction or break-up fee, expense reimbursement, or similar type of payment.

(f)    Identity of Bidders.  Each Potential Bidder must fully disclose the identity of each entity that will be bidding for the Acquired Assets, as well as disclose the organization, form and the business conducted by each entity and what, if any, connection the Potential Bidder has with the Debtors.   Potential Bidders shall be required to provide such additional information as the Debtors may require regarding a bidder's ability to satisfy the requirements of the transaction contemplated by the Modified Purchase Agreement.

(g)    Due Diligence.  The bid must not contain any contingencies of any kind, including, among others, obtaining (i) financing; (ii) shareholder, board of directors or other approval; (iii) the outcome or completion of due diligence.

4

2739432v.4

Each Potential Bidder must also affirmatively acknowledge that the Potential Bidder (i) had an opportunity to conduct due diligence regarding the Acquired Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith except as expressly stated in these Bidding Procedures.

(h)    <u>Consents</u>. Each Potential Bidder must represent that it obtained all necessary organizational (not regulatory) approvals to make its competing bid and to enter into and perform the Modified Purchase Agreement.

(i)    <u>Deposit</u>. A Potential Bidder must deposit 5% of the initial purchase price set forth in Modified Purchase Agreement (inclusive of the Assumed DIP Obligations), plus the amount of the Bidding Protections, with the Debtors in the form of a certified check or wire transfer on or before the Bid Deadline (the "**Deposit**"). The Potential Bidder or the Backup Bidder (defined below) shall forfeit the Deposit if (i) the Potential Bidder of the Backup Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the Debtors' selection of the Successful Bidder, or (ii) the bidder is a Successful Bidder (defined below) and (x) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale contemplated by the bid, or (y) breaches any of the Modified Purchase Agreement. The Deposit shall be returned to the bidder (i) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (ii) no later than five (5) business days after entry of the Sale Order if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder; provided, however, in the event Buyer is not the Successful Bidder, its Deposit shall be returned to it promptly upon termination of the Purchase Agreement, but in no event later than five (5) business days from such termination. The Debtors will maintain any Deposit in a non-interest bearing Debtor account.

(j)    <u>As Is. Where Is</u>: Any Modified Purchase Agreement must provide that the Sale will be on an "as is, where is" basis and without representations or warranties of any kind except and solely to the extent expressly set forth in the Modified Purchase Agreement of the Successful Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid.

(k)    <u>Debtors' Considerations</u>: The Debtors, after consultation with the Creditor's Committee, will have the right to determine that a bid is not a Qualified

5

Bid if either of the following conditions is satisfied: (A) the ability of the Potential Bidder to use the Acquired Assets is not consistent with the Debtors' mission; or (B) the terms of the bid are materially more burdensome or conditional than the terms of the Purchase Agreement and are not offset by a material increase in purchase price, which determination may take into consideration: (1) whether the bid requires any indemnification of such Qualified Bidder; (2) whether the bid does not provide sufficient cash consideration to pay transfer taxes, cure costs or other cash costs of the transaction (including professionals' fees and the Bidding Protections); (3) whether the bid includes a non-cash instrument or similar consideration that is not freely marketable; or (4) any other factors the Debtors, after consultation with the Creditor's Committee, may deem relevant.

The Debtors are offering to sell the Acquired Assets. The Debtors, in consultation with the Creditors' Committee, shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify bidders whether their respective bid(s) have been determined to be a Qualified Bid(s) prior to the Auction. The Debtors may reject any bid that is on terms more burdensome or conditional than the Purchase Agreement or is otherwise contrary to the best interests of the Debtors' estates. In addition to the requirements above, the Debtors may request any additional information from any bidder to assist the Debtors in making a determination as to whether a bid is a Qualified Bid. For the avoidance of doubt, Buyer is a Qualified Bidder and the bid set forth in the Purchase Agreement is a Qualified Bid.

### H.    **Sale to SNCH**

The Purchase Agreement shall be deemed a Qualified Bid and the Buyer shall be deemed a Qualified Bidder. If no Qualified Bid other than Buyer's is submitted by the Bid Deadline, the Debtors shall not hold the Auction, but may proceed with the Sale Hearing and seek approval of the Purchase Agreement and the transactions contemplated thereby.

### I.    **Auction**

In the event that the Debtors timely receive at least one Qualified Bid (excluding Buyer's) by the Bid Deadline for all or any portion of the Assets, the Debtors shall conduct the Auction with respect to the Acquired Assets. The Auction will take place at the offices of counsel to the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021 on **April ____, 2014**, starting at **10:00 a.m.** (EST), or at such other later date and time or other place, as may be determined by the Debtors at or prior to the Auction. The Auction shall be governed by the following procedures:

(a)    Participation. Only the Qualified Bidders that have submitted a Qualified Bid and provided a Deposit(s) will be eligible to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction (and any attorney for a Qualified Bidder may appear at the Auction at the discretion of the Qualified Bidder). In the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith. The Debtors, in consultation with the Creditors' Committee, will evaluate all Qualified Bids received and will select the

2739432v.4

Qualified Bid that reflects the highest or best offer for all or any portion of the Acquired Assets, and otherwise complies with the bid requirements set forth herein, as the "Starting Auction Bid." The Debtors may consider a variety of factors to determine the Starting Auction Bid including changes to the Purchase Agreement and the Qualified Bidder's ability to consummate the Sale. At the Auction, the Debtors shall announce the material terms of each overbid and the basis for calculating the total consideration offered in each such overbid.

(b)    Bidding. Bidding at the Auction shall commence at the amount of the Starting Auction Bid. Qualified Bidders may then submit successive bids in increments of $100,000 (the "Bid Increment"); provided, however, that the Debtor, in consultation with the Creditors' Committee, shall retain the right to modify the Bid Increment at the Auction. Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.

(c)    Higher and Better. The Debtors reserve the right, in consultation with the Creditors' Committee, to determine whether any bid is better, if not higher, than another bid submitted during the Auction. The Debtors may consider a variety of factors in making this decision, including without limitation, the ability of a Qualified Bidder to obtain the necessary regulatory approvals, whether the bid is materially more burdensome than the terms of the Modified Purchase Agreement, any proposed conditions to closing, whether the bid includes any non-cash components and provides significant cash consideration for the payment of required costs of the transaction, and any other factors deemed relevant.

(d)    Successful Bid. The Auction shall continue until there is only one collective offer or separate offers for the Acquired Assets, that the Debtors, in consultation with the Creditors' Committee, determines, subject to Court approval, is (or are) the highest or otherwise best offer(s) from among the Qualified Bids submitted at the Auction (the "**Successful Bid(s)**") and the Debtors announce that the Auction is closed. The Qualified Bidder submitting such Successful Bid shall become the "**Successful Bidder(s)**," and shall have such rights and responsibilities of the purchaser, as set forth in the Modified Purchase Agreement, or the Purchase Agreement, as applicable. Within one business day after the conclusion of the Auction (but in any event prior to the commencement of the Sale Hearing), the Successful Bidder(s) shall (i) complete and execute all Purchase Agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) was made, and (ii) supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Deposit equals 5% of the Successful Bid(s) plus the amount required for the payment of the Bidding Protections.

(e)    Anti-Collusion. At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other Qualified Bidder or potential bidder with respect to the bidding or the Sale.

2739432v.4

(f)     Conduct of Auction. The Auction may be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid; the Debtors or its counsel may meet privately with any Qualified Bidder to negotiate the terms of its bid. The Debtors, in consultation with the Creditors' Committee, may adopt other rules for the conduct of the Auction at the Auction which, in its judgment, will better promote the goals of the Auction.

(g)     Backup Bid. At the conclusion of the Auction, the Debtors will also announce the second highest or otherwise best bid(s) from among the Qualified Bids submitted at the Auction (the "Backup Bid(s)"). The Qualified Bidder(s) submitting such Backup Bid(s) shall become the "Backup Bidder(s)," and subject to the rights of the Successful Bidder, shall have such rights and responsibilities of the Buyer, as set forth in the Modified Purchase Agreement or the Purchase Agreement, as applicable. The Backup Bid shall remain open and irrevocable until the earlier of (x) ninety (90) days following entry of the Sale Order and (y) Closing of the Sale; provided, however, if the Buyer's bid is deemed the Backup Bid, the Buyer's rights and obligations with respect to such bid shall be subject to the terms of the Purchase Agreement. The Backup Bidder's Deposit will be returned by the Debtors upon consummation of the Sale of the Acquired Assets to the Successful Bidder(s) or will be otherwise applied or forfeited as provided in Section G(i) above if the Backup Bidder is determined to be the Successful Bidder, except with respect to the Buyer, which shall be subject to the terms of the Purchase Agreement.

(h)     Extensions/Adjournment. The Debtors reserve their rights, in the exercise of their judgment, in consultation with the Creditors' Committee, to modify any non-material provisions of the Bidding Procedures at or prior to the Auction, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice consistent with the Purchase Agreement and Bid Procedures Order.

J.     **Sale Hearing and Return of Deposits**

The Successful Bid and the Backup Bid will be subject to approval by entry of an order (the "Sale Order") by the Bankruptcy Court after a hearing (the "Sale Hearing") that will take place **April____, 2014 at 10:00 a.m.** (EST). The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court. Upon approval of the Backup Bid by the Bankruptcy Court, the Backup Bid, other than the Buyer's bid which shall be subject to the terms of the Purchase Agreement, shall remain open and irrevocable until the earlier of: (i) ninety (90) days following entry of the Sale Order, or (ii) the Closing of the Sale.

No offer shall be deemed accepted unless and until it is approved by the Bankruptcy Court.

2739432v.4

Objections, if any, to the Sale Motion and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Bankruptcy Court and simultaneously served on: (a) the Office of the United States Trustee, Office of The United States Trustee, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, NY 11722,, Attn: Christine H. Black, Assistant U.S. Trustee, (b) counsel to the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck New York, 11021, Attn: Burton Weston, Esq., Afsheen Shah, Esq. and Adam T. Berkowitz Esq.; (c) counsel for SNCH, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036-8299 Attention Rick Zall, Esq. and Lee Barkan, Esq. and Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention: Frank A. Oswald, Esq.; and (e) counsel to the Creditors' Committee, _____., so as to be **actually received by 4:00 p.m. (EST) on April ___, 2014 (the "Objection Deadline").**

K.    **Consummation of the Sale**

Except as provided herein and in the Purchase Agreement following the Sale Hearing, if for any reason the Successful Bidder fails to consummate the purchase of the Acquired Assets, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. The Debtors and the Backup Bidder are authorized to effect the sale of the Acquired Assets to the Backup Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit(s) shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

L.    **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Acquired Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing.

2739432v.4

# SCHEDULE 2

| AUCTION DATE AND TIME: | April ___, 2014 at 10:00 a.m. (prevailing Eastern Time) |
|---|---|
| BID DEADLINE DATE AND TIME: | April ___, 2014 at 4:00 p.m. (prevailing Eastern Time) |
| SALE HEARING DATE AND TIME: | April ___, 2014 at _____.m. (prevailing Eastern Time) |
| OBJECTION DEADLINE DATE AND TIME: | April ___, 2014 at 4:00 p.m. (prevailing Eastern Time) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

LONG BEACH MEDICAL CENTER, et al..

Debtors.
-----------------------------------------------------------x

Chapter 11
Case No. 14-_____ (   )

**NOTICE OF AUCTION AND HEARING TO CONSIDER APPROVAL
OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' REAL PROPERTY
AND DESIGNATED PERSONAL PROPERTY ACQUIRED ASSETS**

**NOTICE IS HEREBY GIVEN**, as follows:

1.      On February 19, 2014, Long Beach Medical Center ("**LBMC**") and Long Beach Memorial Nursing Home, Inc., d/b/a The Komanoff Center for Geriatric and Rehabilitative Medicine ("**Komanoff**"), as debtors-in-possession (each a "**Debtor**, and collectively sometimes referred to as the "**Debtors**")[1] in these chapter 11 cases (the "Chapter 11 Cases") filed a motion (the "**Motion**"[2]) which in pertinent part (the "**Bidding Procedures Motion**") sought entry of an order (the "**Bidding Procedures Order**") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (a) approving the proposed Bidding Procedures and the schedule to be used in connection with the proposed sale of the Debtors' Acquired Assets, free and clear of all liens, claims and encumbrances, security interests and other interests, to South Nassau Communities Hospital

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include:  Long Beach Medical Center (5084) ("**LBMC**") and Long Beach Memorial Nursing Home, Inc. dba The Komanoff Center for Geriatric and Rehabilitative Medicine (3422) ("**LBMNH**").
[2] Capitalized terms used herein, unless herein defined, are used with the meanings ascribed to such terms in the Motion.

2782157v.1

("**SNCH**" or "**Buyer**"), or to any competing bidder or bidders (the "**Successful Bidder(s)**") that submits or collectively submit a higher or better offer or offers for the Acquired Assets, (b) scheduling an Auction and a Sale Hearing to approve the Sale of the Acquired Assets; (c) approving the form and manner of the notice of the Auction and Sale Hearing; and (d) approving the Break-Up Fee and certain overbid procedures in connection therewith.

2.    A copy of each of the Motion, the Bidding Procedures, and the Bidding Procedures Order may be obtained by: (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov (password required), (ii) going in person to the Office of the Clerk of the Bankruptcy Court at the United States Bankruptcy Court, Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, NY 11722, or (iii) contacting Burton S. Weston, Esq. of Garfunkel Wild, P.C., counsel to the Debtors, at 111 Great Neck Road, Great Neck, NY 11021, by telephone at (516) 393-2588 or by email to bweston@garfunkelwild.com.

3.    As set forth in the Bidding Procedures, the sale of the Acquired Assets remains subject to higher or better offers for all or a portion of the Acquired Assets or separate bids and Bankruptcy Court approval.

4.    All interested parties are invited to make competing offers for all or a portion of the Acquired Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures Order.  The deadline to submit competing offers (the "**Bid Deadline**") is **April \_\_\_, 2014 at 4:00 p.m.** prevailing Eastern time.  Pursuant to the Bidding Procedures Order, if a Qualified Bid is received, the Debtors may conduct an auction (the "**Auction**") for the sale of the Acquired Assets at Garfunkel Wild, P.C., attorneys for the Debtors, at 111 Great Neck Road, Great Neck, NY 11021, on **April \_\_\_, 2014 at 10:00** a.m. prevailing Eastern time.

2782157v.1

5.    The Bidding Procedures Order further provides that a Sale Hearing will be held on **April ___, ,2014 at 10:00 a.m.** (prevailing Eastern time) before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court, Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, NY 11722 (the "**Bankruptcy Court**").

6.    At the Sale Hearing, the Debtors will request that the Bankruptcy Court enter an order, among other things, approving the highest and best bid for the Acquired Assets, or the Sale Agreement (if no Qualified Bid is received) (which will be determined as described in the Bidding Procedures), pursuant to which the Debtors will transfer all of the Acquired Assets. In addition, the Debtors shall request that the Bankruptcy Court provide that the transfer of the Acquired Assets be (i) free and clear of all liens, claims and interests, including successor liability claims except as expressly assumed by Buyer; and (ii) exempt from any stamp tax or similar tax.

7.    At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 case. Objections, if any, to the Sale Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable _____, United States Bankruptcy Judge, 300 United States Bankruptcy Court, Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, NY 11722, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the specific grounds therefore and must be served upon: (a) the United

2782157v.1

States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, NY 11722,, Attn: Christine H. Black, Esq., Assistant U.S. Trustee. (b) counsel to the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck New York, 11021, Attn: Burton Weston, Esq., Afsheen Shah, Esq. and Adam T. Berkowitz; (c) counsel for SNCH, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036-8299 Attention Rick Zall, Esq. and Lee Barkan, Esq. and Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention: Frank A. Oswald, Esq. and Scott Griffin, Esq.; and (d) once appointed, attorneys for the Official Committee of the Unsecured Creditors so as to be actually received by 4:00 p.m. (prevailing Eastern Time) on **April ___, 2014**.

        8.     Requests for information concerning the sale of the Acquired Assets should be directed by written or telephonic request to: Burton S. Weston, Esq. of Garfunkel Wild, P.C., counsel to the Debtors, at 111 Great Neck Road, Great Neck, NY 11021, by telephone at (516) 393-2588 or by email at bweston@garfunkelwild.com.

DATED:      Great Neck, New York
             April ___, 2014

                                 GARFUNKEL WILD, P.C.
                                 Counsel for the Debtors

                                 By:_____
                                 Burton S. Weston
                                 A Member of the Firm
                                 111 Great Neck Road, Great Neck, NY 11021
                                 Telephone No.: (516) 393-2200

2782157v.1